UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **CHARLES E. LEE** | CIVIL ACTION NO. 07-0301 |
| -vs- | JUDGE DRELL |
| **MICHAEL W. WYNNE, et al.** | MAGISTRATE JUDGE KIRK |

### RULING

Before the Court is a motion (Doc. 13), filed by the defendants, to dismiss or, in the alternative, to transfer the suit to the Court of Federal Claims. For the reasons set forth below, the motion is granted as a motion to transfer; we do not consider the arguments relating to dismissal.

### BACKGROUND

As evidenced by the complaint and the rest of the dense record before us, the background to this case is quite complicated, but we endeavor here to condense it. The plaintiff, Charles E. Lee ("Lee"), is a retired United States Air Force Reserve ("USAFR") major who was forced to retire under 10 U.S.C. § 14506 for failure to be promoted to the next pay grade after more than 20 years of service. Lee claims that this failure to be promoted stems from a less-than-flattering Change of Reporting Official ("CRO") Officer Performance Review ("OPR") covering the period of December 6, 1996 to July 1, 1997, from the 917th Maintenance Squadron at Barksdale Air Force Base ("AFB") in Louisiana.

Specifically, Lee alleges that this OPR caused him to receive two Performance Recommendation Forms ("PRFs") marked "Promote" rather than "Definitely Promote," which (he claims) sounded the death knell for his USAFR career.

The basis for Lee's claims are that the OPR and the PRFs in question were issued as retaliation for Lee's reporting a superior's forging of Lee's signature on another officer's OPR. The investigation following Lee's whistleblowing resulted in the superior being denied a promotion and relieved of his command. Lee alleges that the dismissed superior's friends retaliated against Lee by issuing the OPR in an effort to damage his career. In Lee's view, the PRFs were based on the OPR in question. In addition, Lee claims that, based on the hostile work environment following his whistleblowing, he was forced to leave Barksdale AFB and take a non-paying billet until his involuntary retirement.

At heart, Lee claims that the OPR and resulting PRFs were retaliatory, and he wants them corrected; in addition, he wants back pay and allowances for the period of his non-paying billet on the ground that the new position was necessitated by the unlawful response to his whistleblowing. One of his assertions, prominent in this proceeding, is that he was not on duty on April 18, 1997, the date that feedback was supposedly given on the OPR in question. Although the particulars get rather complicated, Lee certainly pursued administrative remedies. First, he sought internal review through an Evaluation Report Appeals Board ("ERAB") soon after the OPR and PRFs were issued, but his requests were denied. He also filed two complaints with the Secretary of the Air Force Inspector General ("SAF/IG") and one with the Department

of Defense Inspector General ("DOD/IG"), which was transferred to the SAF/IG; all three of these complaints concerned the alleged retaliation following Lee's whistleblowing. Apparently nothing came of these investigations, and Lee asserts that they were inadequate.

Next, he twice sought relief from the Air Force Board for Corrections of Military Records ("AFBCMR"). He filed his first AFBCMR petition on February 17, 1999, seeking a variety of remedies relating to the three OPRs from December 6, 1994 to July 1, 1997 and the PRFs relating to his denied promotions, including giving him a fresh chance at a promotion. The AFBCMR denied this first petition on March 15, 2000. Lee was forced to retire on July 25, 1999 pursuant to 10 U.S.C. § 14506 for failure to reach the pay grade of lieutenant colonel after 20 years of commissioned service. He appealed the AFBCMR's denial to the Assistant Secretary of Defense for Force Management Policy ("ASD/FMP"), but the ASD/FMP denied the appeal on August 17, 2001.

Subsequent to that denial, Lee sought the help of various politicians but was unable to make headway until 2005, when Senator David Vitter's staff obtained a letter from the Air Force, dated November 22, 2005, apparently confirming that Lee was not on duty on April 18, 1997. On December 14, 2005 Lee requested that the AFBCMR reconsider his earlier petition in light of this new evidence, since, Lee alleges, the letter proves that the OPR was falsely completed. On January 18, 2006, the United States Air Force ("USAF") submitted an advisory opinion to the AFBCMR, reasoning that the feedback could have been given on a non-duty day, so the letter showing that he was not on duty on April 18, 1997 was not determinative. On May 10, 2006, the AFBCMR

3

denied Lee's appeal, relying in large part on the USAF's advisory opinion and further noting that the matter was time-barred but was reviewed in the interests of justice.

On February 16, 2007, Lee filed the instant suit in this Court. At heart, he asserts that the decisions of the various decision makers along the way (particularly the AFBCMR) were arbitrary and capricious, an abuse of discretion, inadequate, and fundamentally incorrect. Lee's complaint contains four counts: Count I—that the AFBCMR's March 15, 2000 and May 10, 2006 decisions violated the Administrative Procedures Act, 5 U.S.C. § 706; Count II—that the defendants' refusal to correct his personnel file ("agency record") violate the Privacy Act, 5 U.S.C. § 552a(g)(2)(A); Count III—that he is entitled to having a Special Selections Board ("SSB") convened for purposes of determining whether he may be promoted, assuming that his first two claims are successful; and Count IV—that he is entitled to back pay and allowances for unpaid drills from 1997 to 1999, during the period of his non-paying billet.

On May 14, 2007, the defendants, Michael W. Wynne (in his official capacity as Secretary of the USAF) and the USAF, submitted the opposed motion now before us (Doc. 13), a motion to dismiss or, in the alternative, to transfer to the United States Court of Federal Claims. For the reasons set forth below, we grant the motion to transfer and do not consider the arguments relating to dismissal.

## JURISDICTION AND ANALYSIS

Our decision in this case ultimately rests on an inquiry into subject matter jurisdiction. Our jurisdiction over Counts I-III is not in question. We have jurisdiction

4

over those counts pursuant to 28 U.S.C. § 1331, as each of those counts involves a federal statute or regulation. However, Count IV raises interesting questions, as it is a non-tort claim for back pay pursuant to 37 U.S.C. § 206 (relating to the calculation of pay for, inter alia, USAFR members). The significance of this claim is that it implicates the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491.

The Tucker Act comes in two flavors.[1] The Little Tucker Act, 28 U.S.C. § 1346(a)(2), establishes concurrent jurisdiction in the district courts and in the Court of Federal Claims as follows:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> * * *
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

Id.

However, for claims $10,000 and greater, the Big Tucker Act, 28 U.S.C. § 1491, establishes <u>exclusive</u> jurisdiction in the Court of Federal Claims as follows:

> (a) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

---

[1] Although we would like to take credit, the Big Tucker Act and Little Tucker Act nomenclature does not originate with this Court. See, e.g., Fisher v. United States, 402 F.3d 1167, 1172 n.4 (Fed. Cir. 2005).

5

Id. The Federal Circuit has explained:

> The Tucker Act, however, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. Thus, in order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States. What this means is that a Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.

James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998).

In the instant case, Lee claims in Count IV that, in the event the Court finds that he was forced to take a non-paying billet because of a hostile work environment and retaliation against him due to his whistleblowing, he should be entitled to back pay under 37 U.S.C. § 206 for work actually performed. It appears that Section 206 is a potential source of statutory authority for a monetary claim under the Tucker Act.[2] See, e.g., Clark v. United States, 322 F.3d 1358 (Fed. Cir. 2003) (extensively discussing Section 206 in the context of the Tucker Act). Thus, although recovery under the claim itself may be contingent on another finding, recovery under Count IV appears fall within the Tucker Act.

The question, then, is whether it falls under the Little Tucker Act or the Big Tucker Act. Lee does not claim a specific amount of back pay and allowances in his complaint. The defendants, in their memorandum in support of the instant motion, assert that Lee's

---

[2] The plaintiff's memorandum in support asserts a "have your cake and eat it, too" argument in asserting that the back pay claim is a statutory monetary claim sufficient to allow recovery in the district court but is not a statutory monetary claim sufficient to give rise to Tucker Act jurisdiction. (Memorandum in Support, pp. 18-20). Either it is or is not a cognizable statutory monetary claim; it cannot be both at once. In any event, we decline to address that question in light of our lack of jurisdiction, given the uncertain amount in controversy.

claim exceeds $10,000. Lee, in response, claims that the total amount does not exceed $10,000, but he does not specify that amount. Thus, it is not clear, based on the record before us, what the amount in controversy actually is. What is clear is that if the claim is valid, and if it is worth $10,000 or more, this Court would lack jurisdiction to hear it, as the Court of Federal Claims would have exclusive subject matter jurisdiction. On the other hand, if it does not exceed $10,000, although we may hear the claim, the Court of Federal Claims would still have jurisdiction.

We believe the deciding factor is found in the plaintiff's own statements. In his memorandum in support, after quoting the defendants' assertions that his back pay claim exceeds $10,000, the plaintiff contends, "That premise is far from clear. . . . Jurisdiction in this Court is not lost because defendants allege a monetary value with no proof of how they determined that value." (Memorandum in Support, p. 19). Although the plaintiff does assert that the claim does not exceed $10,000, he has not made a binding stipulation to that effect or otherwise expressly waived his right to recover more than $10,000. Cf. Waters v. Rumsfeld, 320 F.3d 265, 271-72 (D.C.Cir. 2003) (remanding to the district court with the direction to transfer to the Court of Federal Claims, based on the plaintiffs' failure to "expressly disclaim monetary damages over $ 10,000"). Accordingly, we lack subject matter jurisdiction to hear Count IV.

Having found that we lack jurisdiction, we must now decide what step we may take. 28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction") provides in full:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer

7

such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Id.

We find that it is in the interests of justice to transfer the entire suit to the Court of Federal Claims rather than to dismiss it for lack of subject matter jurisdiction. Thus, we grant the motion before us solely as a motion to transfer. We do not consider the arguments relating to dismissal.

## CONCLUSION

For the reasons set out above, the motion before us is treated as a motion to dismiss and is GRANTED. By separate order, this suit is transferred to the Court of Federal Claims.

SIGNED on this 27 day of March, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE