U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG 2 6 2009

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLES E. LEE | CIVIL ACTION NOS. 1:07-CV-0301 |
| -vs- | JUDGE DRELL |
| MICHAEL W. WYNNE, as SECRETARY of the AIR FORCE | MAGISTRATE JUDGE KIRK |

## RULING

Before the court is a motion to dismiss for lack of subject matter jurisdiction filed by defendant, Michael Wynne, in his official capacity as Secretary of the United States Air Force. (Doc. 32). The plaintiff, Charles Lee, had attained the rank of major as an Air Force reservist prior to being involuntarily retired. Lee sued the Air Force in 2007 after twice airing his complaint before the Air Force Board for Correction of Military Records ("AFBCMR"). For the reasons below, defendant's motion to dismiss will be granted.

### I. Background

The facts can be summarized from Lee's complaint. Officers in the military are frequently rated by their superiors for performance. Major Lee was himself a rater of other officers. Lee alleges that in 1995, an Officer Performance Report ("OPR") for an officer under his command was completed without his knowledge and that Lee's signature was forged on this OPR by Lee's direct commanding officer, Lieutenant

Colonel Lindell Mabus. In January 1996 Lee reported this activity to Lt. Col. Mabus's direct commanding officer. Lt. Col. Mabus was subsequently relieved of command and denied promotion on account of the forgery. Lee's complaint alleges that Lt. Col. James Partington, "a close friend" of Lt. Col. Mabus, was later responsible for rating Lee as an officer. Lt. Col. Partington prepared two successive OPRs during the period of December 1995 to July 1997 that were substandard in their evaluation of Lee's abilities. According to Lee's view of military custom, anything other than superior marks in an OPR is the kiss of death for an officer's career. Tellingly, Lee was passed over for promotion to Lieutenant Colonel in both 1997 and 1998. Lee was forced to retire in 1999 for twice failing to promote to the next higher grade and having twenty years of service, as provided for by law. See 10 U.S.C. § 14506 (2009).

Lee complains about one of the OPRs in particular. Specifically, it contains a date of '18 Apr 97' as the date upon which a live performance feedback session allegedly occurred between Lt. Col. Partington and Lee. Lee asserts that this session never occurred and that the OPRs should be rejected as untrustworthy in their entirety because they were fraudulent as to this portion. To support this claim, Lee posits an Air Force document ("AF Form 526," for the period of June 2, 1996 through June 1, 1997—the one-year period covering the events Lee complains of) showing that he was not on duty on the date of that supposed feedback session.

The tale of Lee's exhaustion of his administrative remedies is a long one. Lee began seeking redress through the Air Force's internal channels: First he sought internal review through an Evaluation Report Appeals Board ("ERAB") soon after the OPRs were

issued, but his requests were denied. He also filed two complaints with the Secretary of the Air Force Inspector General ("SAF/IG"), and another with the Department of Defense Inspector General ("DOD/IG") which was transferred to the SAF/IG; all three of these complaints concerned the alleged retaliation following Lee's whistleblowing. Apparently nothing came of these investigations, as Lee continued to seek redress. Pursuant to federal law, Lee next petitioned the AFBCMR[1] to remove the two offending OPRs from his records. In so doing he hoped for a reopening of his military status and reconsideration for promotion. Both times his requests for correction were denied.

Lee filed his first AFBCMR petition to correct his OPRs on February 17, 1999, which the AFBCMR denied in an opinion dated March 15, 2000. (Administrative Record 1, at 2–8.) The AFBCMR's 2000 opinion notes it was not persuaded that adverse actions were taken against Lee in reprisal for whistle blowing on Lt. Col. Mabus. Thus, it treated his application as one seeking to correct an "error or injustice." *Id.* at 6. The AFBCMR found "insufficient evidence" to warrant corrective action. It noted the prior, internal investigations of Lee's complaints by the Air Force, and agreed that the raters on Lee's OPRs had not been biased in rendering their performance reviews of Lee. Nor did the AFBCMR "find the lack of a feedback session, in and of itself, to be a sufficient basis to invalidate the OPR closing 1 July 1997." Lastly, the AFBCMR did not find any evidence that the July 1997 OPR had a forged rater's signature on it nor that the OPR had been prepared at variance with the Air Force's "governing instructions." *Id.* at 6–7.

---

[1] *See* 32 C.F.R. §§ 865.0–865.8 (2009) (containing AFBCMR's internal guidelines).

After the AFBCMR's 2000 refusal to correct his records, Lee persuaded his congressional representatives to intervene on his behalf. As a result of inquiries by Lee's representatives, the Air Force sent a response letter to Senator David Vitter of Louisiana attesting that Lee's AF Form 526—which document showed that Lee was not on duty on April 18, 1997 and which was expressly considered as part of the AFBCMR's first decision—was indeed accurate. Armed with this letter, plaintiff applied for a second time to the AFBCMR in December 2005. Despite the second application's being untimely,[2] the AFBCMR reconsidered Lee's case after making an "interest of justice" finding. On May 10, 2006 the AFBCMR issued its second opinion, once again denying Lee's claim for correction. (Administrative Record 2, at 3-5.) The AFBCMR's opinion notes that reservists such as Lee often receive performance feedback while not on duty, e.g., by telephone, and that Lee had proved nothing more than that he was not on duty. Furthermore, the AFBCMR concluded that the Air Force's regulations do not require that a feedback session actually be held in person. The AFBCMR referenced an Air Force Reserve memorandum that recites: "an OPR is considered accurate at the time it is written, unless substantial proof is presented to contradict the report. The applicant has not presented any proof that the OPR is inaccurate or contains false statements." *Id.* at 4, 15. In other words, Lee had once again failed to convince the board that the feedback session had never occurred at all, leaving Lee short of his burden of proving that his OPR actually had been falsified by Lt. Col. Partington.

---

[2] *See* 10 U.S.C. § 1552 (1998) (requiring that requests for correction of military records be filed with the proper corrections board "within three years after [the serviceman] discovers the error or injustice").

Out of options with the Air Force, Lee filed the instant lawsuit in 2007, alleging that the manner in which the AFBCMR handled his administrative efforts to correct his military records violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Privacy Act, 5 U.S.C. § 552a(g)(2)(A) (2004). These two acts provide for judicial review of the decisions of agencies such as the United States Air Force. Defendant filed a motion to dismiss plaintiff's complaint because Lee's non-tort civil action against the United States under the APA was not filed within the six-year statute of limitations established by 28 U.S.C. § 2401(a). Further, defendant argues that the Privacy Act claim in Lee's complaint was not filed within the two year period provided in 5 U.S.C. § 552a(g)(5). *If correct, these defenses would deprive the court of subject matter jurisdiction over this complaint.* Plaintiff opposes dismissal on grounds that the new evidence (the letter to Sen. Vitter verifying Lee's off-duty status) he submitted for the second decision by the AFBCMR meant that only the board's second decision from May 2006—not its first decision in 2000—was the final agency decision for purposes of commencing the two statutes of limitations. Additionally, plaintiff's brief in opposition requests application of the defense of equitable tolling. We will treat these issues separately.

## II. Rule 12(b)(1) Standard

Defendant moves to dismiss plaintiff's suit owing to this court's lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A court must dismiss for lack of subject matter jurisdiction if it lacks "the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir.

2005) (internal quotation omitted). A court may grant a Rule 12(b)(1) motion only if "the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Among other bases, the Fifth Circuit permits a court to decide a Rule 12(b)(1) motion on the basis of the allegations contained in the plaintiff's complaint as supplemented by undisputed facts, *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (internal quotation omitted), which we do here. However, in the event of disputed factual matters pertinent to disposition of a Rule 12(b)(1) motion, a district court may "weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Id.*

### III. Analysis

#### A. Administrative Procedure Act

We begin our analysis by noting that this is not a discharge case. In discharge cases, former servicemen usually sue to have military records "corrected" by upgrading a discharge from an armed service to a better status or to void a discharge in its entirety. The right to sue in discharge cases accrues upon the date of discharge. *Geyen v. Marsh*, 775 F.2d 1303, 1308–09 (5th Cir. 1985), *reh'g denied*, 782 F.2d 1351 (5th Cir. 1986); *accord Martinez v. United States*, 333 F.3d 1295, 1303 n.2, 1304 (Fed. Cir. 2003) (en banc) (collecting cases). Here, however, Lee's complaint presents an APA challenge against an AFBCMR decision that Lee claims was arbitrary and capricious, unsupported by substantial evidence, and legally erroneous. Yet if the statute of limitations to sue has run, we are without jurisdiction to review the AFBCMR decision under any standard.

The right to sue in an APA case accrues upon the date of the AFBCMR's decision refusing to correct the records in question. *Geyen*, 775 F.2d at 1309–10. In other words, the AFBCMR's denial of an applicant's claim operates as the "final agency action" for APA purposes. 32 C.F.R. § 865.4(p) (2009) ("The [Air Force] Board [for Correction of Military Records] acts for the Secretary of the Air Force and its decision is final when it . . . [d]enies any application."); *see* Administrative Procedure Act, 5 U.S.C. § 704 (2007) (providing for judicial review of "final agency action" only). This case is only difficult because there are two refusals by AFBCMR to correct Lee's military records. Thus we must decide whether the first or second decision of the AFBCMR is the final agency action.

As recounted above, the AFBCMR twice—in 2000 and 2006—denied plaintiff's applications for correction of the allegedly offending OPRs. In each instance, plaintiff made the same claims about the same OPRs and—save for one minor detail—presented the same evidence. The distinguishing evidentiary detail is a November 2005 letter from the chief of the Air Force's Congressional Inquiry Division addressed to Senator David Vitter stating that Lee's Air Force Form 526, for the period of June 2, 1996 through June 1, 1997—the period covering the events Lee complained to the AFBCMR about—was correct. This confirmatory letter was obviously not part of the AFBCMR's 2000 decision. However, the same Form 526 verified as correct in the letter had been in Lee's possession since it was first requested in August 1997, and it formed part of the administrative record and was expressly considered documentary evidence in the AFBCMR's decision in 2000. (*See* Administrative Record 1, at 7–8). We conclude, then,

that the 2000 panel of the AFBCMR expressly rejected the contentions and supporting evidence that Lee would raise again in 2005 regarding the performance feedback session that plaintiff urges never occurred.

Two conditions must be met for an agency's action to be considered final. *Bennett v. Spear*, 520 U.S. 154 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177–78 (internal citations and quotation marks omitted). Second, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (internal citations and quotation marks omitted). As noted above, an AFBCMR's denial is the consummate stop within the Air Force for a serviceman desiring to correct his records administratively. 32 C.F.R. § 865.4(p) (2009) ("The [AFBCMR] acts for the Secretary of the Air Force and its decision is final when it . . . [d]enies any application."). Further, because the Fifth Circuit holds that it is the AFBCMR's denial that serves as the date upon which an applicant's cause of action challenging that denial accrues, *see Geyen*, 775 F.2d at 1309; it is evident that rights are "determined" and "legal consequences" flow from such a decision.

Thus, we find that the March 15, 2000 decision by the AFBCMR was the final action for purposes of both finality and exhaustion. *See id.* at 1308 n.6 ("[E]xhaustion is concerned with *when* in the administrative process a court may interject itself. Finality, although closely related to exhaustion, concerns *what* agency actions are reviewable, regardless of when they may be reviewed.") (emphases in original). Because the AFBCMR's decision constituted the "what" and March 15, 2000 was the "when," Lee

could have sued immediately after receiving that decision. The six-year statute of limitations began to run on that date.

Some discussion is appropriate as to why the 2006 decision is not "the" final agency action instead, with only it being subject to judicial review under the APA. The short answer is that the 2000 decision got there first. The 2006 AFBCMR decision recites that, while Lee's December 2005 application is untimely (and an Air Force advisory opinion recommended disposal of the application on that ground alone),[3] an unspecified "interest of justice" finding warranted the board's discretionary waiver of the time limits for Lee's second application.[4] The 2006 decision was not, then, some reopening or continuation of the first decision in 2000, nor another required step in the administrative exhaustion process; curiously, the AFBCMR makes no mention of its earlier 2000 decision

---

[3] *See* 32 C.F.R. § 865.3(f) (2009) ("Ordinarily, applicants must file an application within three years after the error or injustice was discovered, or, with due diligence, should have been discovered. An application filed later is untimely and may be denied by the Board on that basis. [However,] [t]he Board may excuse untimely filing in the interest of justice."). The OPRs complained of by plaintiff were completed in 1997 and 1998, meaning that three years would have passed by the time he applied to the AFBCMR for the second time in December 2005.

[4] The 2006 decision is *not* a procedural reconsideration of the 2000 decision in light of newly discovered relevant evidence, in which case plaintiff might have a better argument (i.e., non-exhaustion of administrative remedies until all evidence had been submitted) in favor of our subject matter jurisdiction. 32 C.F.R. § 865.6 (2009) ("The Board may reconsider an application if the applicant submits newly discovered relevant evidence that was not available when the application was previously considered."). The AFBCMR panel has the discretionary authority to gauge the relevancy and merit of any "new" evidence submitted with an application for reconsideration. *Id.* The AFBCMR did not, in its discretion, treat Lee's application as a motion or application to reconsider or reopen, nor as a case of "new evidence" to be considered. *Cf. Green v. White*, 319 F.3d 560, 566–67 (3d Cir. 2003) ("[A]ny petition for rehearing to the ABCMR which does not include 'new evidence' or reflect some 'changed circumstances' does not re-start the six-year statute of limitations. If, however, the ABCMR re-opens a proceeding and rules upon a petition that does contain such new evidence, such a ruling will constitute a final agency action and will re-start the six-year time limit. This will be the case even if the petition is filed more than six years after the original ABCMR decision in a petitioner's case."). The Third Circuit notes, however, that its rule conflicts with those announced in other courts' decisions in the area of military records corrections board reconsiderations. *Id.* at 563–68. The Fifth Circuit has not directly considered the issue.

at all. Rather, the 2006 decision was simply the result of a duplicative application alleging the same underlying facts supported by the identical documentation that formed the basis of the 2000 decision. In other cases where multiple re-applications for correction have been made to a military record corrections board and the question of accrual is concerned, courts have looked to the board's first denial as the one and only final agency action and, as such, the date of accrual. *See, e.g., Soble v. Army Bd. of Corr. of Mil. Records*, No. 98–1516, 1998 WL 516770 (7th Cir. July 30, 1998); *Lewis v. U.S. Army Rev. Bds. Agency*, No. EP-06-CA-14, 2006 WL 1788125, at *1 & n.3 (W.D. Tex. June 26, 2006); *Warner v. United States*, 225 Ct. Cl. 717 (1980). We will not do otherwise.

In the same vein, it is useful to discuss why the 2006 decision is not "another," or separate, final agency action along with the final agency action of 2000. The most obvious reason is that they are the exact same decision. Yet plaintiff argues that, if the 2000 decision alone is the final decision of the AFBCMR, then the 2006 decision is essentially an unreviewable agency decision regardless of how arbitrary and capricious it might be. This argument is alluring, but ultimately unpersuasive. The plaintiff would have us make him the beneficiary of two causes of action under the APA for but one alleged injury—the AFBCMR's arbitrary and capricious disposition of his complaint—simply because the AFBCMR failed to recognize that it had already considered the *identical* complaint five years before based on the *same* evidence and had reached the *same* result. If plaintiff's argument were accepted, applicants before corrections boards could rack up causes of action and extend the statute of limitations indefinitely simply by reapplying repeatedly and being denied over and over again. *See*

*Geyen v. Marsh*, 775 F.2d 1303, 1308 (5th Cir. 1985), *reh'g denied*, 782 F.2d 1351 (5th Cir. 1986) (presenting this conjectural absurdity as justification to reject a similar argument in the context of a discharge). We see no cause to upset the underlying prudential concerns of statutes of limitations such as 28 U.S.C. § 2401(a) here.

**B.  Privacy Act**

Lee also alleges that the falsified OPR violates his rights under the Privacy Act. *See* 5 U.S.C. § 552(a)(g) (2004). Defendant argues that this action is also time-barred. The Fifth Circuit notes its "agree[ment] with the majority of other circuits that, under section 552a(g)(5) of the Privacy Act, a cause of action accrues when the plaintiff knew or should have known of the alleged violation." *Smith v. United States*, 142 Fed. App'x 209, 210 (5th Cir. 2005) (citation omitted). We conclude that Lee's Privacy Act cause of action accrued on the date he knew of the alleged errors in his OPRs and, as such, is barred as untimely under the two-year statute of limitations (even as tolled during the exhaustion of his administrative remedies before the AFBCMR until March 15, 2000).

**IV.  Equitable Tolling**

Unless the statute of limitations was equitably tolled, the APA's six-year statute of limitations period ended on March 15, 2006, six years after the March 15, 2000 AFBCMR decision. The two-year statute of limitations in Privacy Act cases ended on March 15, 2002. We follow the Fifth Circuit's guidance in applying this doctrine:

> [The Fifth Circuit] appl[ies] the doctrine of equitable tolling sparingly. As [that Circuit has] explained:
>
>> The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable. Equitable tolling will be granted in rare and

> exceptional circumstances, and will not be granted if the applicant failed to diligently pursue his rights. Equitable tolling applies principally when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. . . .
>
> . . . .
>
> Encapsulating the diligence and extraordinary circumstances test into two elements, the Supreme Court has stated, "To be entitled to equitable tolling, [the petitioner] must show (1) that he has been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."

*Howland v. Quarterman*, 507 F.3d 840, 845 (5th Cir. 2007) (internal citations omitted, alteration in original).

While Lee sought further administrative and congressional channels after the AFBCMR's decision in 2000, this is not a pursuit of his rights in the sense required by the equitable tolling doctrine. There must be a diligent pursuit of *judicial* remedies: e.g., timely filing the wrong pleading, or filing a complaint in the wrong court.[5] Plaintiff waited until February 2007 to pursue a *judicial* remedy. Nor has plaintiff presented evidence of extraordinary circumstances beyond his control or inducement to inaction

---

[5] *See, e.g., Irwin v. Dep't of Veterans Aff.*, 498 U.S. 89, 95–96 (1990) ("Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his *judicial* remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.") (emphasis added, footnote omitted); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 267–68 (5th Cir. 1991) ("Given the policies favoring limitation periods, federal courts have typically extended equitable relief only sparingly. For example, courts have been willing to apply equitable tolling in cases where the claimant has actively pursued judicial remedies by filing a timely but defective pleading, or where the claimant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. Courts have been less willing, however, to apply equitable tolling in situations where the claimant's delay in seeking a judicial remedy resulted from his choice to pursue administrative relief first.") (citations omitted); *see also Roden v. Amer. Fed'n*, No. 08-2578, 2009 WL 40001, at *2 (7th Cir. Jan. 08, 2009) (same).

or other deception on the part of defendant in concealing his cause of action from him. Therefore, we find that equitable tolling is not applicable to plaintiff's causes of action.

## V. Conclusion

Lee's complaint was not filed in this court until February 2007 and the six-year statute of limitations applicable to his APA cause of action had run out on March 15, 2006. The two-year statute of limitations in his Privacy Act cause of action ended on March 15, 2002. The doctrine of equitable tolling does not apply. We are without subject matter jurisdiction to entertain either Lee's APA or Privacy Act suit. For that reason, defendant's motion to dismiss will be granted by separate judgment.

SIGNED on this 26 day of August, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE